J. S40008/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA　　:　　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　　　　:　　　　　PENNSYLVANIA
　　　　　　　　v.　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
SAMUEL A. JONES, JR.,　　　　　　　:　　　No. 901 WDA 2014
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Appellant　　　　　　 :

Appeal from the PCRA Order, April 28, 2014,
in the Court of Common Pleas of Cambria County
Criminal Division at No. CP-11-CR-0000750-2006

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:　　　　**FILED NOVEMBER 05, 2015**

Samuel A. Jones, Jr., appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.

Appellant was found guilty of 12 criminal charges following jury trial on November 6, 2006, including conspiracy to commit robbery, robbery, theft and receiving stolen property against two victims.  A three-day jury trial was held on November 2, 3, and 6, 2006.  Appellant was tried along with co-defendant, Otis Williams.  Appellant was represented at trial by attorneys Mary Elizabeth Schaffer and Richard Corcoran, of the Cambria County Public Defender's Office.

Both victims testified.  Brian Woy testified that on the evening of January 23, 2006, he and a friend, Bob Layton, went to the Fairfield Avenue

--------

* Retired Senior Judge assigned to the Superior Court.

Lounge to shoot pool at approximately 11:00 p.m. Shortly after midnight, they left the bar. When Woy was unlocking his car door, two black males approached. The two men split up. The "shorter" male went to Woy's side and the "taller" one went to the passenger's side, where Layton was standing. The shorter black male pumped and then aimed a sawed-off shotgun at Woy's face. He said "this ain't no fuckin joke; just give me your fuckin money." (Trial transcript, 11/2/06 at 50.) Woy complied and handed over the contents of his pockets to the shorter male. Meanwhile, the taller male said to Layton, "give me all you got." (*Id.* at 91.) Layton complied and gave him $25, a pack of cigarettes, and a lighter. The shorter male grabbed the pool sticks off the roof of Woy's car and the robbers fled. As the robbers were fleeing, Woy witnessed the taller male grab the pool sticks off the shorter male. (*Id.* at 70.) The shorter male got into the driver's seat of a white Jeep Cherokee, and the taller one ran towards an alley. Woy saw a white female in the Jeep, and he was able to provide the license plate number to the police. Neither victim could identify the robbers from a photo line-up.

The Commonwealth presented the testimony of the officers involved in the investigation who described how they located the Jeep. They also described how a conversation with the registered owner of the Jeep led them to Diana Hullenbaugh. Officer Gregory Keselyak testified that he observed

co-defendant Williams and Hullenbaugh together in the white Jeep approximately 18 hours before the armed robbery.

Hullenbaugh testified that in the early afternoon of January 23, 2006, she, Cynthia Rhoads, appellant, and co-defendant Williams were together drinking and smoking crack at Williams' apartment. Hullenbaugh testified that Rhoads and Williams may have left to get money or beer and returned. (*Id.* at 145.) She recalled that at one point she watched Williams' children when he left to go to Rhoads' apartment. With regard to the times and when and who may have left the apartment during the time the four were together, Hullenbaugh testified that she did not remember "all the details of everything that happened that day." (*Id.* at 183.)

She did recall that later that evening, the foursome decided to travel together to a bar to purchase more beer. Hullenbaugh drove the foursome in a borrowed white Jeep Cherokee and parked in the parking lot of Zeke's Pizza near the Fairfield Avenue Lounge. The women waited in the vehicle while the men went to purchase beer. Suddenly, according to Hullenbaugh, the men ran back towards the car. Appellant smacked the driver's side window as he ran by and said "Come on." (*Id.* at 151.) Appellant continued to run down the alley by Zeke's Pizza. Williams came back to the Jeep and shouted for Hullenbaugh to move. She jumped into the backseat, and Williams got into the driver's seat and proceeded to drive. The Jeep stopped to pick up appellant a few blocks away. When appellant

got back into the car, he had two pool sticks. Although neither man would tell her what just happened, "it was obvious that they had something that did not belong to them." (*Id.* at 155.) Hullenbaugh testified that she was upset and that she "didn't want to be a part of it" and just wanted out of the vehicle. (*Id.*) The Jeep was abandoned on a street near the Oakhurst housing project, and the four occupants went their separate ways. Hullenbaugh testified that later that same night, she and Williams searched together for the Jeep, hoping to return it to its owner before it could be seized by police. However, police had located and impounded the Jeep shortly after it was abandoned. Hullenbaugh testified that she was not charged with any crime.

The other female in the Jeep was Cynthia Rhoads. She did not appear at the trial pursuant to her subpoena. The Commonwealth was compelled to issue a material witness subpoena to Rhoads. She was questioned outside of the presence of the jury as to why she did not voluntarily comply with the subpoena to attend. Rhoads testified that she feared for her safety because co-defendant Williams' girlfriend "Tammy" told her she had better not show up at the trial to testify or there would be "trouble."

Appellant's counsel, Attorney Schaffer, argued that she should be permitted to cross-examine Rhoads in the presence of the jury as to her non-appearance.

> We have an absolute right to cross -- confront the
> witnesses when it goes to impeachment and bias for

> her testimony. We have an absolute right to inquire into why she might be testifying for the Commonwealth and why she didn't appear yesterday and she had to go to jail to testify.

*Id.* at 30-31. The trial court did not permit the inquiry because evidence of witness tampering would have disadvantaged appellant. (*Id.* at 33.)

Rhoads' account of what happened was basically the same as Hullenbaugh's version of events. She testified that the four spent the afternoon and evening together. She testified that she may have left the group at one point to borrow money from someone to buy beer, and Williams may have left the apartment briefly to buy beer. Rhoads testified that the four left together to get beer and parked in front of Zeke's Pizza. She testified that when appellant and co-defendant Williams got out of the Jeep, she believed they were going to get beer. Rhoads testified when the two men got back into the Jeep, they were "hyper." She also confirmed that appellant returned to the car carrying pool sticks. In addition, Rhoads testified that co-defendant Williams later brought a sawed-off shotgun to her apartment and that she refused to let him hide it there. She testified that she was given nothing in exchange for her testimony. (*Id.* at 76.)

Detective Lawrence Wagner, the detective in charge of the investigation, described what the victims reported to him and the details of his investigation. Attorney Schaffer objected to Detective Lawrence's testimony as inadmissible because:

> Woy and Layton already testified. Detective Wagner sat in this courtroom the entire time. He is rehashing what . . . he's going to clear up all their inconsistent statements, so I would just note for the record that this testimony is not permissible. They testified. The jury can make their own determinations. He can't comment on what they told him.

*Id.* at 85. The objection was denied.

The Commonwealth also presented the testimony of Denny Barnes who testified that co-defendant Williams came to his house on January 23, 2006, during the early evening hours, and asked him if he wanted to buy a sawed-off shotgun for $75. Barnes' aunt, Nannette Casado, corroborated Barnes' testimony. After the robbery, she called Detective Wagner and reported that Williams was at her house trying to sell Barnes a sawed-off shotgun.

Co-defendant Williams testified in his own defense and provided an alibi for himself and appellant. According to Williams, both men were at Edder's Den, a bar near the public housing complex where they lived, at the time of the armed robbery and, therefore, could not have been the perpetrators. Williams' alibi was corroborated by Allen Hinton, who confirmed that both Williams and appellant were at Edder's Den that evening.

The jury found appellant and co-defendant Williams guilty of all charges. Appellant was sentenced on December 19, 2006.

On January 23, 2007, appellant filed a direct appeal to this court. In an unpublished memorandum opinion dated February 19, 2008, this court found appellant's issues were waived due to counsel's failure to develop arguments and/or point to where and how the issues were preserved. *Commonwealth v. Jones*, No. 188 WDA 2007, unpublished memorandum (Pa.Super. filed February 19, 2008).

On December 26, 2008, appellant filed a PCRA petition and argued, *inter alia*,[1] that his trial counsel, Attorney Schaffer, was ineffective because she waived his appellate rights because she did not appeal this court's February 19, 2008, decision to the Pennsylvania Supreme Court. (Docket #54.) After a hearing on March 10, 2009, the trial court vacated appellant's sentence after realizing that it had erred in imposing appellant's original sentence. The trial court resentenced appellant to an aggregate term of 7 to 22½ years' imprisonment. The PCRA court also determined that Attorney Schaffer was ineffective for failing to file a petition for allowance of appeal to our supreme court. The PCRA court did not address or conduct a hearing on appellant's remaining claims. The PCRA court reinstated appellant's direct appeal rights as well as his right to file post-sentence

---

[1] Those additional claims included: ineffective assistance of counsel for (1) failing to raise alibi defense; (2) failure to confront/impeach witness; (3) failure to introduce exculpatory evidence (Walmart receipt); (4) failure to file a pre-trial motion to sever his trial from trial of his co-defendant Williams.

motions. (Trial court order, 3/10/09 (Docket #67).) New counsel, John Lovette, Esq., was appointed.

On March 20, 2009, appellant filed post-sentence motions with the trial court pursuant to Rule 720 of the Rules of Criminal Procedure. Those motions included: (1) a motion for judgment of acquittal on the grounds that appellant's conviction was based solely on the contradictory and inconsistent testimony of Hullenbaugh and Rhoads which was not sufficient to sustain the conviction entered; (2) a motion for a new trial because the verdict was against the weight of the evidence, which was also based on appellant's contention that the testimony of Hullenbaugh and Rhoads was inconsistent and contradictory and not sufficient to sustain the conviction entered; and (3) a motion for a new trial based on ineffective assistance of counsel for failing to: (a) present defense witnesses, John Gordon and Harry Hinton (Allen Hinton's brother); (b) present an alibi witness, Bre Burchin; (c) request severance of appellant's trial from that of co-defendant Williams; and (d) introduce exculpatory evidence, namely, a Walmart receipt which would have impeached Hullenbaugh. (Docket #70.)

A hearing was held on May 12, 2009. Appellant testified that he informed Attorney Schaffer of an alibi witness, Bre Burchin. He testified that Attorney Schaffer failed to call Burchin at trial. Appellant admitted that Burchin was alive but not present at the hearing. Appellant further testified that he provided Attorney Schaffer with the names of Harry Hinton and

John Gordon who overheard Hullenbaugh threaten appellant that she would implicate him in a robbery if appellant did not give Hullenbaugh drugs and money. Attorney Schaffer, however, did not present the testimony of either of these witnesses at trial. Neither Gordon nor Harry Hinton appeared at the post-sentence motion hearing. Appellant's counsel represented to the court that he attempted to subpoena Harry Hinton and Gordon; however, he was unable to locate either of them. Appellant also testified that Attorney Schaffer failed to introduce a Walmart receipt dated January 23, 2006, which would have placed Hullenbaugh on the "east side" of town at 4:41 p.m. when she testified she was with appellant at co-defendant's house 25 minutes away on the "west side" of town from midafternoon until 10:00-10:30 p.m. Appellant testified that Attorney Schaffer was aware of the Walmart receipt, but she never used it at trial to impeach Hullenbaugh. (Post-sentence motions hearing transcript, 5/12/09 at 1-17.)

The Commonwealth called Attorney Schaffer. She testified that the investigator for the public defender's office contacted Burchin, who "indicated she would not lie for [appellant] and would not help us out." (**Id.** at 28.) Attorney Schaffer stated that she relayed that information to appellant. Attorney Schaffer also testified that numerous times during the trial, she requested to sever appellant's trial from his co-defendant's. As to the Walmart receipt, Attorney Schaffer testified that she never saw that receipt before and appellant did not ask her to use it prior to trial. (**Id.** at

33.) Finally, Attorney Schaffer testified that she was not made aware that Harry Hinton and Gordon heard Hullenbaugh threaten appellant.

The trial court denied appellant's post-sentence motions on June 1, 2009. (Docket #78.) Appellant appealed from the judgment of sentence. Once again, this court found that appellant's counsel had waived all of his issues, this time due to lack of specificity of his Rule 1925(a) statement. We affirmed judgment and recommended that appellant file a PCRA petition alleging a "layered" claim of ineffectiveness so that the PCRA court could examine whether appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness. *Commonwealth v. Jones*, No. 1115 WDA 2009, unpublished memorandum (Pa.Super. filed August 5, 2010). Appellant petitioned for allocatur which was denied on June 20, 2011. (Docket #92.)

On February 21, 2012, appellant, *pro se*, filed a PCRA petition. He raised claims of ineffectiveness of trial counsel for: (1) failing to produce an alibi witness; (2) failure to request a "corrupt source" jury instruction; (3) failure to utilize the Walmart receipt to impeach Hullenbaugh; and (4) failure to question Hullenbaugh and Rhoads as to whether they received leniency or immunity from the Commonwealth in exchange for their testimony. Appellant also raised a layered claim of ineffective assistance of appellate counsel for his failure to preserve issues of trial counsel's ineffectiveness on direct appeal. (Docket #93.)

The trial court treated appellant's February 21, 2012 PCRA petition as appellant's "second" PCRA petition and concluded that appellant failed to make a **prima facie** showing of a miscarriage of justice. **Commonwealth v. Davis**, 816 A.2d 1129 (Pa.Super. 2003). The trial court did not appoint counsel but instead issued a Pa.R.Crim.P. 907 notice of its intent to dismiss appellant's petition without a hearing. When appellant did not respond to the notice, the court dismissed his petition. (Docket #94.)

Appellant timely appealed to this court **pro se**. In a memorandum dated July 12, 2013, this court found that the trial court erroneously treated appellant's February 21, 2012 PCRA petition as his "second" petition, rather than his first,[2] and failed to appoint PCRA counsel even though appellant was indigent. This court vacated the trial court's order and remanded for further proceedings. **Commonwealth v. Jones**, No. 713 WDA 2012, unpublished memorandum (Pa.Super. filed July 12, 2013).

New PCRA counsel was appointed. On December 13, 2013, appellant filed the amended first PCRA petition which is at issue in this appeal. Appellant raised the following errors: (1) error of the trial court in joining his trial with co-defendant Williams; (2) error of the trial court in giving an

---

[2] The PCRA petition filed on December 26, 2008, resulted in his direct appeal rights being reinstated. Consequently, the PCRA court should have considered appellant's February 21, 2012 **pro se** PCRA petition as his first. **Commonwealth v. Vega**, 754 A.2d 714 (Pa.Super. 2000). The PCRA petition at issue, although amended, is appellant's first PCRA petition. We have not considered the merits of any of appellant's issues previously.

inadequate jury charge relative to the joinder; (3) error of the trial court in limiting cross-examination of Cynthia Rhoads on a material witness warrant; (4) ineffective trial counsel assistance in failing to ask for severance; (5) ineffective trial counsel assistance in failing to request a limiting instruction regarding prejudicial evidence admissible only against the co-defendant; (6) ineffective trial counsel assistance in failing to cross-examine witnesses Diane Hullenbaugh and Cynthia Rhoads regarding immunity or leniency; (7) ineffective trial counsel assistance in failing to request sequestration of Detective Lawrence Wagner; (8) ineffective trial counsel assistance in failing to request a "polluted source" instruction; (9) ineffective trial counsel assistance in failing to subpoena Harry Hinton as a defense witness and failing to disclose that Harry Hinton was at that time also represented by Attorney Schaffer; (10) ineffective trial counsel assistance in failing to locate and interview witnesses to corroborate the alibi offered by co-defendant Williams as corroborated by Allen Hinton that both appellant and Williams were at Edder's Den at the time of the robbery; (11) ineffective trial counsel assistance in failing to present evidence of the Walmart receipt to impeach Hullenbaugh; and (12) cumulative ineffective trial counsel assistance resulting in prejudice.

A PCRA hearing was held on January 15, 2014. Appellant presented no witnesses. He did testify on his own behalf. Appellant testified that he asked Attorney Schaffer to subpoena Harry Hinton, who allegedly overheard

Diana Hullenbaugh threaten to implicate appellant in "another robbery." (PCRA hearing transcript, 1/15/14 at 20.) Two weeks later, Hullenbaugh gave police a statement about appellant's involvement in the robbery, which led to his conviction in this case. The Commonwealth presented the testimony of trial counsel, Attorney Corcoran and Attorney Schaffer. Neither attorney knew of any deal that the Commonwealth had with Rhoads or Hullenbaugh or if the Commonwealth was offering immunity to these two women in exchange for their testimony. (*Id.* at 9.)

On April 28, 2014, the trial court denied the PCRA petition. On appeal, appellant raises the following issues:

1. Whether the PCRA Court erred and abused its discretion by failing to find the trial court improperly joined co-defendant Otis Williams for trial because the majority of the evidence presented at the joint trial, the testimony of witnesses Keselyak, Barnes, Cassado, Hullenbaugh, and Rhoads, was only admissible against defendant Williams, yet highly prejudicial to Appellant, and the jury could not have reasonably been expected to separate said evidence?

2. Whether the PCRA Court erred and abused its discretion by failing to find the trial court gave an inadequate jury instruction regarding the joinder of the trials and which evidence was admissible against defendant Williams but not Appellant, which allowed the jury to consider inadmissible and highly prejudicial evidence against the Appellant, which resulted in Appellant's conviction?

3. Whether the PCRA Court erred and abused its discretion by failing to find the trial court erred

by limiting Appellant's cross-examination of witness Rhoads regarding her initial failure to appear to testify, which thereby violated Appellant's constitutional right to confront witnesses against him?

4.  Whether the PCRA Court erred and abused its discretion by failing to find trial counsel ineffective for failing to file a pre-trial motion to sever the trials and preserve the issue, because of the prejudicial nature of the evidence that was only admissible against co-defendant Williams?

5.  Whether the PCRA Court erred and abused its discretion by failing to find trial counsel ineffective for failing to request the appropriate limiting instruction regarding the prejudicial evidence only admissible against co-defendant Williams, as the record clearly shows that had the evidence been considered only against co-defendant Williams, the outcome of the trial would have been different with regard to Appellant?

6.  Whether the PCRA Court erred and abused its discretion by failing to find trial counsel ineffective for failing to properly cross-examine witnesses Hullenbaugh and Rhoads regarding expectations of immunity/leniency, as the evidence clearly showed that had trial counsel done so, the outcome of the trial probably would have been different?

7.  Whether the PCRA Court erred and abused its discretion by failing to find trial counsel ineffective for failing [to] offer a timely request to sequester witness Detective Lawrence Wagner, as Detective Wagner did not testify from personal knowledge, and only served to improperly bolster other Commonwealth witnesses?

8. Whether the trial court erred/abused its discretion in finding the jury instructions were "more than fair," thus, trial counsel was not ineffective for requesting a "polluted source" instruction, since the record demonstrates that had the instruction been requested and given, there was a reasonable probability the outcome would have been different?

9. Whether the trial court erred/abused its discretion by failing to find trial counsel ineffective for failing to call witness Harry Hinton in support of Appellant's defense?

10. Whether the trial court erred/abused its discretion by failing to find trial counsel ineffective for failing to inform Appellant that she represented Mr. Hinton and had a conflict of interest?

11. Whether the trial court erred and abused its discretion by finding the alibi defense was "adequately presented" to the jury and trial counsel was not ineffective for failing to fully investigate Appellant's alibi, given that the record does not support such a finding, as testimony from the trial indicates the existence of many potential witnesses that could have refuted the Commonwealth's witnesses but were not contacted by Appellant's trial counsel?

12. Whether the trial court erred and abused its discretion by accepting trial counsel's assertion that she had never seen the Wal-Mart receipt and failing to find trial counsel ineffective for failing to present evidence to impeach witness Hullenbaugh, given the receipt was a key piece of physical evidence that refuted the Commonwealth's theory of the crime, and trial counsel could not have credibly testified that she never saw it?

13. Given the record shows it was filed one day past the appeal period, and Mr. Jones's counsel acted to file the appeal as soon as Mr. Jones's [sic] notified him of his desire to appeal, but his letter to his counsel was delayed due to the fact of Mr. Jones's incarceration in a distant state correctional institution, should the [sic] Mr. Jones's appeal be deemed untimely?

Appellant's brief at 1-4.

Our standard of review for an order denying post-conviction relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free from error. *Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa.Super. 2010). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Id.*

Moreover, as most of appellant's issues on appeal are stated in terms of ineffective assistance of counsel, we also note that appellant is required to make the following showing in order to succeed on such a claim: (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa.Super. 2010). The failure to satisfy any prong of this test will cause the entire claim to fail. *Commonwealth v. Daniels*, 947 A.2d 795, 798 (Pa.Super. 2008). Finally, counsel is presumed

to be effective, and appellant has the burden of proving otherwise. ***Commonwealth v. Pond***, 846 A.2d 699, 708 (Pa.Super. 2003).

We find no error in the PCRA court's holding. After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the PCRA court, it is our determination that there is no merit to the questions raised on appeal.

Before addressing the merits of appellant's appeal, we will address the timeliness of appellant's appeal. Appellant asserts that his appeal to this court was timely even though it was filed one day past the 30-day appeal period. A review of the trial court docket shows that the trial court denied appellant's amended PCRA petition on April 28, 2014. However, the opinion and order did not contain a notice that appellant was required to file an appeal within 30 days. In ***In the Interests of J.M.P.***, 863 A.2d 17, 20 (Pa.Super. 2004), ***appeal denied***, 878 A.2d 864 (Pa. 2005), we declined to quash an untimely appeal where the juvenile court's order did not explicitly inform J.M.P. that he had 30 days in which to file an appeal, nor did it reference Pa.R.A.P. 903(a), which states that an appeal must be filed within 30 days after the entry of the order from which the appeal is taken. ***See also Commonwealth v. Wright***, 846 A.2d 730 (Pa.Super. 2004) (where a PCRA court restores a defendant's direct appeal rights ***nunc pro tunc***, the court must inform the defendant that the appeal must be filed within 30 days of the entry of the order); ***Commonwealth v. Bogden***, 528 A.2d

168 (Pa.Super. 1987) (holding that an appeal would not be quashed as untimely when trial court misinformed the defendant by not advising him that an appeal had to be taken within 30 days of the imposition of sentence); **Commonwealth v. Coolbaugh**, 770 A.2d 788 (Pa.Super. 2001) (declining to quash the appeal where failure to file a timely appeal was the result of the court's misstatement of the appeals period, **i.e.**, a breakdown in the court's operation). Here, it is undisputed that the PCRA court's order did not inform appellant of his appeal rights. We decline to quash this appeal as untimely in these circumstances.[3]

In Issues 1 through 3, appellant incorrectly frames the issues as trial court error. The PCRA procedurally bars claims of trial court error by requiring a petitioner to show the allegation of error is not previously litigated or waived. 42 Pa.C.S.A. §§ 9543(a)(3), 9544. At the PCRA stage, claims of trial court error are either previously litigated (if raised on direct appeal) or waived (if not). **See Commonwealth v. Spotz**, 18 A.3d 244, 260-261, 270 (Pa. 2011). Trial court error may constitute the arguable merit prong of an ineffective assistance of counsel claim, but the issue must be framed properly for a petitioner to be entitled to relief. **See**

---

[3] We note that on May 22, 2014, appellant sent a letter from a State Correctional Institution located in Albion to the Cambria County Prothonotary, which requested that his attorney file an appeal on his behalf. The Prothonotary immediately forwarded the letter to counsel who filed a notice of appeal on May 29, 2014.

***Commonwealth v. Paddy***, 15 A.3d 431, 449 n.11 (Pa. 2011). Accordingly, these issues fail.

In Issue 4, appellant contends that trial counsel was ineffective for failing to file a pre-trial motion to sever his trial from the trial of his co-defendant Williams. Appellant alleges that the joint trial resulted in actual prejudice and, in fact, was a substantial factor in bringing about his conviction. He contends that the bulk of the Commonwealth's evidence related only to Williams, including: (1) the testimony of Officer Keselyak who testified that Hullenbaugh and co-defendant **Williams** were together in the white Jeep on the day before the robbery; (2) the testimony of Barnes and Cassado that **Williams** offered to sell a sawed-off shotgun hours or days before the armed robbery; and (3) the testimony of Rhoads that co-defendant **Williams** asked to stash a sawed-off shotgun at her apartment days after the crime.

Our supreme court, considering Pa.R.Crim.P. Rules 582 and 583 together, set forth the following three-part test for deciding a motion to sever:

> Where the defendant moves to sever offenses not based on the same act or transaction that have been consolidated in a single indictment or information, or opposes joinder of separate indictments or informations, the [trial] court must . . . determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the

affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

***Commonwealth v. Collins***, 703 A.2d 418, 422 (Pa. 1997), citing ***Commonwealth v. Lark***, 543 A.2d 491, 496-497 (Pa. 1988).

In addition, it is well established that "the law favors a joint trial when criminal conspiracy is charged." ***Commonwealth v. Housman***, 986 A.2d 822, 835 (Pa. 2009). We have explained:

> A joint trial of co-defendants in an alleged conspiracy is preferred not only in this Commonwealth, but throughout the United States.
>
> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability.

***Commonwealth v. Colon***, 846 A.2d 747, 753-754 (Pa.Super. 2004) (citations omitted).

When a conspiracy is alleged, a separate trial for co-defendants should only be granted where the two defenses are "irreconcilable and exclusive" and "conflict at the core." ***Commonwealth v. Presbury***, 665 A.2d 825, 827 (Pa.Super. 1995).

Here, the conspiracy crimes charged against each defendant were identical. They arose out of the same facts. The Commonwealth averred that appellant and co-defendant Williams conspired to commit a robbery. Their defenses did not conflict but were identical. Both denied involvement. Co-defendant Williams testified that he and appellant were at Edder's Den and, therefore, could not have been the perpetrators. Alibi witness, Allen Hinton, corroborated Williams' testimony that both were at Edder's Den.

Moreover, to succeed on this issue, appellant must show "a real potential for prejudice and not just mere speculation." **Commonwealth v. Rivera**, 773 A.2d 131, 137 (Pa. 2001). The Commonwealth presented the testimony of Hullenbaugh and Rhoads which placed both appellant and co-defendant Williams at the scene of the crime and appellant in possession of the pool sticks when he got back into the Jeep. Even without the evidence of co-defendant Williams' attempts to stash and sell the sawed-off shotgun, there was overwhelming evidence which implicated appellant in the robbery. Hullenbaugh and Rhoads gave identification testimony that was positive and unequivocal. We agree with the PCRA court that appellant has failed to demonstrate that he was prejudiced by counsel's failure to move for severance before trial.

> If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not

> first determine whether the first and second prongs
> [of the ineffectiveness test] have been met.

*Commonwealth v. Albrecht*, 720 A.2d 693, 701 (Pa. 1998).  Therefore, this claim fails.

In Issue 5, appellant asserts that trial counsel was ineffective for failing to request the appropriate limiting instruction regarding the prejudicial evidence admissible only against co-defendant Williams.  Appellant contends that trial counsel should have requested the court to instruct the jury that some of the evidence may be admissible as to one defendant, but not to the other.  He contends that the jury was "left to consider all of the evidence against both defendants when it was impermissible to do so."  (Appellant's brief at 11.)

We do not agree that such a limiting instruction would have changed the outcome of the case.  Again, the evidence against appellant was overwhelming.  The evidence pertaining to co-defendant Williams' particular role in the robbery was clearly capable of separation by the jury and easily compartmentalized.  There was no reasonable ground to find that the jury could not keep separate what was relevant to each defendant.  Moreover, the trial court did instruct the jury that it was not necessary that it reach consistent verdicts as to appellant and co-defendant Williams.  (Trial transcript, 11/6/06 at 89.)  The trial court instructed the jury that it must evaluate the evidence to determine if the Commonwealth met its burden of proof as to each defendant.  (*Id.*)  We conclude, when the instructions to

the jury are considered as a whole, appellant failed to establish that he suffered prejudice which would entitle him to relief. His ineffectiveness claim, therefore, fails.

In Issue 6, appellant contends that trial counsel was ineffective for failing to properly cross-examine Hullenbaugh and Rhoads regarding expectations of leniency and immunity in exchange for their testimony. This issue is without merit. Both public defenders testified at the PCRA hearing that they were not aware of any deal by the Commonwealth to offer either Hullenbaugh or Rhoads leniency or immunity in exchange for their testimony. Further, Rhoads did testify that she was not offered anything in exchange for her testimony, and Hullenbaugh testified that she was not charged with any crime. Therefore, this claim of ineffectiveness fails.

In Issue 7, appellant asserts that trial counsel was ineffective for failing to request to sequester Detective Wagner. "The purpose of sequestration of witnesses is to reduce the possibility that a witness may, from what he hears in the courtroom, improperly mold his testimony to fit some plan not riveted to the standards of truth." ***Commonwealth v. Fawcett***, 443 A.2d 1172, 1173-74 (Pa.Super. 1982), quoting ***Commonwealth v. Smith***, 225 A.2d 691, 694 (Pa. 1967). Appellant contends that Detective Wagner did not testify from personal knowledge and only served to improperly bolster other Commonwealth witnesses. We have carefully reviewed Detective Wagner's testimony and find that he testified

from his personal knowledge. Detective Wagner testified from his police report and gave a detailed explanation of his investigation, what he learned from the reports of the officers on the scene, and his personal interviews of the victims and witnesses. There is nothing to support appellant's contention that his testimony was influenced by what he heard in the courtroom. He was well aware of the facts prior to the trial. He prepared the witness statements of Hullenbaugh and Rhoads, which were signed by them. He was extensively cross-examined. In any event, we find that there was sufficient other evidence to sustain the verdict since Hullenbaugh and Rhoads were unequivocal in their identification of appellant as one of the robbers. Appellant has thus failed to establish that but for this alleged error there was a reasonable probability that the outcome of the proceedings would have been different.

In Issue 8, appellant contends that trial counsel was ineffective for failing to request a "polluted source" instruction and the trial court did not give one. Therefore, the jury did not take into account the possibility that the testimony of accomplices was tainted. Contrary to appellant's contention, the trial court gave a polluted source instruction and instructed the jury:

> [T]he special rules that you would have to apply if you decide that one or both of them [Hullenbaugh and Rhoads] was an accomplice are as follows: First, you should view the testimony of an accomplice with disfavor because it comes from a corrupt and polluted source. Two, you should

examine the testimony of that accomplice closely and only accept it with care and caution. Third, you should consider whether the testimony of an accomplice is supported in whole or in part by other evidence.

Accomplice testimony is more dependable if it is supported by independent evidence. However, even if there is no independent supporting evidence, you may find the defendants guilty solely on the basis of accomplice testimony if, after using these special rules I just told you about, you're satisfied beyond a reasonable doubt that the accomplice testified truthfully and that the defendants are guilty.

Trial testimony, 11/2/06 at 71. Counsel will not be deemed ineffective for failing to raise a meritless objection to proper jury instructions.

In Issue 9, appellant argues that trial counsel was ineffective for failing to call defense witness Harry Hinton who would have testified that he overheard Hullenbaugh say to appellant that she would testify against him if he did not provide her with drugs and money. Appellant also contends that trial counsel was ineffective because she did not inform appellant that she represented Harry Hinton and had a conflict of interest.

Appellant failed to establish the witness was known or should have been known to counsel. To prevail on an ineffectiveness claim for failure to call a witness, appellant must prove: (1) the witness existed; (2) the witness was available; (3) trial counsel knew or should have known of the witness' existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) absence of the witness'

testimony prejudiced appellant. ***Commonwealth v. Pursell***, 724 A.2d 293 (Pa. 1999), ***cert. denied***, 528 U.S. 975 (1999).

Here, Attorney Schaffer testified at the PCRA hearing that she was not aware that Harry Hinton allegedly overheard Hullenbaugh threaten appellant. The PCRA court credited Attorney Schaffer's testimony. Accordingly, appellant failed to establish the witness was known or should have been known to counsel. Accordingly, this claim fails.

In Issue 10, appellant asserts that trial counsel was ineffective because she did not present his alibi defense, and if she would have, appellant would have been acquitted. Appellant asserts that he told Attorney Schaffer about an alibi witness, Burchin, who would have testified that appellant was with her at the time of the robbery. To show ineffectiveness for not presenting alibi evidence, appellant must establish that counsel could have no reasonable basis for his act or omission. ***Commonwealth v. Carpenter***, 725 A.2d 154, 163 (Pa. 1999). A reasonable basis for not introducing this purported alibi evidence is readily apparent from the record. At the PCRA hearing, Attorney Schaffer testified that her investigator contacted Burchin, who indicated that she would not lie for appellant and would not help appellant at the trial. Counsel was not ineffective for declining to present an alibi witness who contradicted appellant's own statements. ***See Commonwealth v. Hardcastle***, 701 A.2d 541, 545 n.4 (Pa. 1997).

In Issue 11, appellant contends that trial counsel was ineffective because she failed to present a Walmart receipt with Hullenbaugh's account number, which was time-stamped 4:41 in the afternoon, which would have directly refuted evidence that the foursome were together at the housing complex from early afternoon until just before midnight.

This court has recognized that the reasonableness of counsel's investigative decisions can depend critically upon information that his client relates to him. *See Commonwealth v. Williams*, 846 A.2d 105, 113 (Pa. 2004); *Commonwealth v. Bond*, 819 A.2d 33, 45 (Pa. 2002), citing *Commonwealth v. Uderra*, 706 A.2d 334, 340-341 (Pa. 1998), *cert. denied*, 526 U.S. 1070 (1999); *Commonwealth v. Peterkin*, 513 A.2d 373, 383 (Pa. 1986), *cert. denied*, 479 U.S. 1070 (1987). "Thus, assuming a reasonable investigation, where there is no notice to counsel of particular mitigating evidence, he cannot be held ineffective for failing to pursue it." *Commonwealth v. Basemore*, 744 A.2d at 735, citing *Commonwealth v. Howard*, 719 A.2d 233, 238 (Pa. 1998).

Attorney Schaffer testified at the May 12, 2009 PCRA hearing that she never saw the Walmart receipt before and appellant did not ask her to use it prior to trial. The PCRA court credited her testimony. Counsel cannot be held ineffective for failing to pursue evidence of which she had no notice. In any event, appellant failed to show that admission of the Walmart receipt would have changed the outcome of the trial. With regard to the times and

when and who may have left the apartment during the time the four were together, Hullenbaugh testified that she did not remember all the details of everything that happened that day. Neither woman testified that they were with appellant and co-defendant Williams uninterrupted from early afternoon until midnight. Rhoads testified that at one point the foursome were in her apartment and at other times they were in Williams' apartment and that members of the group left at various points and returned. The Walmart receipt does not necessarily contradict their testimony.

Accordingly, having found no merit in the issues on appeal, we will affirm the order below.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/5/2015